### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

JULIE A. BACKLUND,

                    **Plaintiff,**

-vs-                                                  CASE NO.  **6:10-cv-1085-ORL-DAB**

COMMISSIONER OF SOCIAL
SECURITY,

                    **Defendant.**
_____/

### ORDER

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title

42 United States Code Section 405(g), to obtain judicial review of a final decision of the

Commissioner of the Social Security Administration (the Commissioner) denying her claim for

disability insurance benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the

Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings

and memoranda submitted by the parties in this case.  Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is  is **REVERSED** and the

matter is **REMANDED** to the Commissioner for further proceedings.

## I.        BACKGROUND

### A.        Procedural History

Plaintiff filed for a period of disability and disability insurance benefits on February 20, 2003

R. 94-97.  She alleged an onset of disability on August 7, 2002, due to degenerative disc disease,

syncope, lower back problems, and numbness in her hands and feet, and an affective disorder.  R. 55-57, 126, 134, 161. Her application was denied initially and upon reconsideration. R. 55-64.  Plaintiff requested a hearing, which was held before Administrative Law Judge Edward Bayouth-Babilonia (hereinafter referred to as "ALJ") and resulted in an unfavorable decision dated April 25, 2006.  R. 37-44.

The Appeals Council vacated the ALJ's original decision and remanded the case with instructions.  R. 501-04.  The ALJ held another hearing on April 9, 2008, and, in a decision dated August 6, 2008, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision.  R. 20-33.  Plaintiff timely filed a Request for Review of the ALJ's decision, which the Appeals Council denied on June 4, 2010.  R.11-14.  Plaintiff filed this action for judicial review on July 21, 2010.  Doc. 1.

### B.    Medical History and Findings Summary

Plaintiff was 50 years old at the time of the ALJ's August 2008 decision.  R. 109, 916.  She has a high school education, plus one year of college, and past relevant work as a retail sales manager, storekeeper, and restaurant manager.  R. 916, 936-37.

Plaintiff's medical history is set forth in detail in the ALJ's decision.  By way of summary, Plaintiff complained of pain in her head radiating down right shoulder and arm, pain in hip, degenerative disc disease, syncope, lower back problems, and numbness in her hands and feet, an affective disorder, insomnia, loss of memory and concentration, and high blood pressure.  R. 55, 57, 126, 134, 155, 161, 169.  In the August 6, 2008 decision, after reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from status post degenerative disc disease of the cervical spine with spondylolisthesis and spondyloses; status post spinal diskectomy at C4-5 and spinal graft fusion; peripheral polyneuropathy and a major depressive disorder, which

were "severe" medically determinable impairments, but were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 22-23. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform some sedentary and light activities. R. 24. In making this determination, the ALJ found that Plaintiff's allegations of pain and other symptomatology were disproportionate to the objective medical findings and were not credible beyond limiting the claimant as stated in the RFC. R. 30-31. Based upon Plaintiff's RFC, the ALJ determined that she could not perform past relevant work. R. 31. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as an appointment clerk, dispatcher, call out operator, an order clerk, cashier II/checker, parking lot attendant, and photo copy machine operator. R. 32. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 33.

Plaintiff now asserts three points of error. First, she argues that the ALJ erred in failing to recontact the treating and examining sources. Second, she claims the ALJ erred in failing to ensure Plaintiff received a fair hearing. Third, Plaintiff contends the ALJ erred by posing an inaccurate hypothetical to the VE. Because the Court finds that the ALJ's decision was not based on substantial evidence, the decision is **REVERSED** and the matter is **REMANDED** to the Commissioner for further proceedings.

## II.      STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings

are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The

Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C.

§ 405(g).  Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely

create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable

person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th

Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*,

402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm,

even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir.

2004).  "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of

the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206,

1210 (11th Cir. 2005).  The district court must view the evidence as a whole, taking into account

evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord, Lowery*

*v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine

reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability.  *See* 20 C.F.R. §§ 404.1520,

416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R.

§ 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments

which significantly limit her physical or mental ability to do basic work activities, then she does not

have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's

impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she

is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from

doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's

impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).

## III.    ISSUES AND ANALYSIS

### A.  ALJ's assessment of the evidence on remand from the Appeals Council

Plaintiff argues that the ALJ erred in not complying with the order of remand from the Appeals Council ("AC") dated July 20, 2006 which required the ALJ to request additional evidence and clarification from the treating and examining sources (R. 503) because the ALJ failed to submit clarifying interrogatories to the treating and examining sources.  The Commissioner argues that the ALJ substantially complied with the AC's directive and any error in failing to recontact the treating and examining sources was harmless error.

The Social Security Regulations ("Regulations") state, "[t]he ALJ shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand." 20 C.F.R. § 404.977(b).  In the AC's order remanding the case to the ALJ (R. 502-04), the AC identified two pertinent areas for which the decision did not "satisfy the regulatory requirements":

> -The [ALJ's] rationale does not address the opinions expressed in Exhibit 23F as to the claimant's ability to perform work·related functions, or indicate the evidentiary weight, if any, which can be accorded such opinion evidence, as required by 20 CFR 404.1 527, and Social Security Rulings 96-2p, 96-5p. and 96-6p.  The Administrative Law Judge rejected the opinions of treating sources in Exhibit 21F, but did not attempt to contact either source to clarify the opinions.

> -New evidence submitted with the request for review suggests visual limitations and a change in the severity of the claimant's depressive disorder which warrant further development.

R. 502.  The ALJ was ordered on remand to:

- Obtain additional evidence of the claimant's impairments in order to complete the administrative record in accordance with regulatory standards concerning existing medical evidence (20 CFR 404.1512-1512). The additional evidence shall include updated records from all of the claimant's treating sources.

*- Request that the treating and examining sources provide additional evidence and clarification of their opinions and their medical source statements about what the claimant can do despite the impairments (20 CFR 404.1512).*

- Obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairments, including whether the impairments meet or equal the severity of an impairment listed in Appendix 1, Subpart P, Regulations No. 4.

- In light of the additional evidence, further evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 CFR 404.1529 and Social Security Ruling 96-7p) .

- Fully evaluate the claimant's mental impairment in accordance with the special technique described in 20 CFR 404.1520a and document application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404. 1520a(c).

- Give further consideration to the claimant's maximum mental and physical residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of the assessed limitations (Social Security Rule 96-8p).  In so doing, fully evaluate the treating and examining source opinions and non-examining source opinions pursuant to the provisions of 20 CFR 404.1527 and Social Security Rulings 96-2p, 96-5p, and 96-6p, and explain the weight given to such opinion evidence.

- Obtain evidence from an independent vocational expert regarding the effects, if any, of the claimant's non-exertional limitations and other vocational factors on her ability to perform work existing in significant numbers in the national economy.

R. 503 (emphasis added).

Plaintiff argues that the ALJ did not follow the AC's order directing him to recontact the treating and examining sources for clarification of their opinions of her RFC.[1]  Plaintiff contends that

---

[1]Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments.  20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997).  The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof.  *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d).  If a
(continued...)

if the ALJ had properly recontacted these sources, he would have obtained evidence that she was unable to perform any work in the national economy.  Plaintiff further argues that the ALJ should not have relied on the testimony of two medical experts (ME) who testified during the hearing.

Plaintiff contends that the ALJ – and not Plaintiff – was directed to request additional "evidence and clarification" from the treating and examining sources, but failed to do so.  Plaintiff points to the ALJ's statement at the first post-remand hearing on April 12, 2007, where the ALJ took no testimony but stated:

> This is an Appeals Council remand.  Prior to this hearing, we had a prehearing conference with the claimant's representative . . . and we indicated to him that the case will have to be continued to comply with the Appeals Council Remand Order, which is requesting that we contact the claimant's treating physicians in relation to the [RFC] assessments that were made, Exhibit 20 and 21 – F20 and F21, so they would clarify their opinions in these medical source statements about what the claimant can do despite the impairments.  The claimant's representative obtained additional medical evidence from two other treating sources and we also need to send interrogatories to these other treating sources.  I am going to refer this claimant also to a neurological consultative examination with completion of a physical medical assessment form and also for a consultative psychological evaluation and then the case will be rescheduled with medical experts and this will conclude the proceedings in this case.

R. 844-45.  The treating physicians specifically mentioned, Dr. Zwolinski (Ex. F20) and Dr. Gail Van Diepen (Ex. F21), as well as Dr. Benezette, had provided RFC assessments opining that Plaintiff had severe limitations precluding even sedentary work.

Prior to February 2005, Plaintiff chiefly complained of chronic neck and lower back pain.  R. 408.  She had undergone an anterior cervical fusion of C4-5 and C5-6 in March of 2003; she also had

---

[1](...continued)

treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

a lower back fusion of L3-4 and L4-5 with pedicle screws and posterior lumbar interbody fusion. R. 408.  Rheumatological testing excluded any obvious connective tissue disorder.  R. 408.

Dr. Ralph Zwolinski, a treating neurologist at the Headache and Pain Center of Florida, opined on March 31, 2005, that Plaintiff could lift and carry a maximum of 5 pounds occasionally; stand for 15 minutes at a time or a total of 1 hour; sit for 15 minutes at a time or a total of 2 hours; and walk 250 feet at one time or a total of 750 feet.  R. 434.  On April 1, 2005, Dr. Gail VanDiepen, treating family doctor, opined that Plaintiff had similar restrictions.  R. 437-38.  Both doctors opined that she would be absent from work more than three times a month.  R. 435, 438.

Dr. Alyn Benezette, a treating neurologist, opined on August 16, 2006, that Plaintiff could stand for 10 minutes at a time for a total of 1 hour and sit for 30 minutes at time for a total of 2 hours, and would also need to lie down at unpredictable intervals throughout the day.  R. 599-600.  Dr. Benezette subsequently opined in March 2008 that Plaintiff had very similar restrictions, except Plaintiff could stand for 30 minutes at a time and could sit for 15 minutes at one time.  R. 669-70.

The Commissioner concedes that nothing in the record indicates the ALJ did in fact recontact these sources with a request that they "provide additional evidence and clarification of their opinions and their medical source statements about what the claimant can do despite her impairments," as specifically ordered by the AC.  Instead, The Commissioner argues that the ALJ's failure to recontact them was harmless error, and the ALJ otherwise complied with the remand order by obtaining updated treatment records from the treating sources, soliciting testimony from two medical experts ("MEs"), further evaluating Plaintiff's subjective complaints and her mental impairment, by giving further consideration to Plaintiff's RFC, and by obtaining testimony from a VE in accordance with the other directives in the AC's remand order.  Doc. 18 at 5 (citing R. 24-33, 593-646, 669-99, 842-947).  The Commissioner contends that the ALJ in this case had no duty to recontact any of Plaintiff's physicians

-8-

because their opinions were neither ambiguous nor incomplete and because there was ample medical evidence in the record for the ALJ to conclude that Plaintiff was not disabled.  Doc. 18 at 7 (citing R. 434-35, 437-38, 599-600, 669-70).

As the ALJ found, the treating physicians' opinions were inconsistent with their own treatment notes, thus, it was not necessary to seek "clarification," but instead were a factor in weighing the opinions in accordance with the regulations.  The ALJ relied on the testimony of the ME, Dr. Witkind, a Board Certified Neurosurgeon (R. 861), in discounting Plaintiff's treating physicians' opinions of her limitations.

Plaintiff's October 14, 2005 MRIs of her spine showed only mild to moderate findings and Dr. Witkind testified that the cervical MRI showed no significant stenosis, normal alignment, and stated that there was "not much there."  R. 440-43, 881.  Dr. Witkind went through a very detailed analysis for the ALJ of all of the medical records (R. 861 to 869)[2], including highlighting the MRI of the lumbar spine dated March 29, 2006, which showed a normal alignment and signal of vertical bodies without evidence of compression, fracture, or spondylolisthesis, mild to moderate disk bulging, with the exception of T11-12, and no evidence of cord compression or spinal stenosis.  R. 591-92; 886, 888 (Dr. Witkind: findings are "quite mild"; there is no evidence to support the opinions that Plaintiff has cervical radiculopathy or lumbar radiculopathy).  Similarly, follow-up MRIs of the cervical, thoracic, and lumbar spine in July 2006 revealed some mild to moderate disk bulging, but were otherwise unremarkable.  R. 622-35.  Plaintiff argues that she was actually suffering from hip

---

[2]To the extent Plaintiff argues that Dr. Kronberger only reviewed a total of 30 pages of the record on the day of the hearing, that argument is meritless.  Doc. 12 at 19.  Based on the Court's review of the full approximately 1,000 pages of the record and his testimony at the hearing, Dr. Kronberger was clearly familiar with and had reviewed the entire record prior to the hearing.  He reviewed an additional 30 or so pages faxed to him the day of the hearing that had been forwarded at the last minute after Plaintiff's representative submitted them the day of the hearing.  R. 850.  Plaintiff's argument that Dr. Witkind mistakenly answered incorrectly that he had already heard Plaintiff's testimony (R. 863) is equally unavailing since he was testifying based on the medical records in the file.

pain at that time, however, she did not have surgery until 2009.  The ALJ's decision, and his reliance on Dr. Witkind's testimony, was based on substantial evidence.

Plaintiff argues that the ALJ should not have relied on Dr. Witkind's opinion that Plaintiff's use of multiple narcotics for pain relief, that she was in a "current state of substance abuse" (R. 880, 896), because this opinion went too far and is not supported by the record.  She argues that Dr. Benezette, D.O., the treating neurologist and Sanjay S. Sastry, M.D., (an anesthesiologist) in 2008 had signed off on the fact that Plaintiff was not abusing drugs in a fashion that might jeopardize spinal cord stimulation implant trial.  R. 672, 673.  While the ALJ relied on Dr. Witkind's testimony as to the lack of severity of Plaintiff's lumbar, thoracic, and lumbar spine problems and cited this testimony at length in the decision (*see* R. 24-28), the ALJ cited Dr. Witkind's opinion of a substance abuse problem in the context of Plaintiff's intentional drug overdose; Dr. Witkind had noted that the record revealed one of Plaintiff's physicians had recommended that "the substance abuse be stopped five years ago."  R. 24.

To the extent Plaintiff contends that she did not receive a fair hearing because her representative learned only at the last minute the identity of the ME Dr. Witkind, she has alleged no prejudice, and his qualifications are unchallenged as a board certified neurosurgeon licensed in Florida.  On the issues raised by Plaintiff regarding Dr. Witkind's testimony or opinion regarding Plaintiff's physical condition, the ALJ's decision was based on substantial evidence, and it was not error for the ALJ to fail to request "clarification" from these neurologists or family doctors.

However, as argued by Plaintiff, it was error for the ALJ not to obtain the complete records from Bert Fish Hospital for Plaintiff's suicide attempt and intentional drug overdose which were directly related to Plaintiff's major depressive disorder and possibly episode of deterioration.  All that is contained in the record is a single page emergency room discharge form (R. 700) which simply

gives instruction for a "drug overdose" and contains no treatment notes or diagnosis.  The full record

of the suicide attempt is particularly important in this case because Plaintiff's treating "counselor" was

a pastoral counselor (Rev. Deitch) and not someone qualified under the SSR to provide a diagnosis

(R. 30) and he did not provide any notes (R. 906); her prescription anti-depressants were being

prescribed by her family doctor and neurologist/pain medicine physician.  R. 312, 386-400, 615, 636,

782.  As the board certified psychologist and medical expert Dr. Kronberger pointed out, based on

the MMPI test conducted by Dr. Merilson, the diagnosis "is a little bit in doubt, because at least at that

point there were no episodes of suicide [inaudible] that was specifically addressed in [any] of the prior

mental status exams and visits with doctors. . .  So I'm not sure how the recurrent severe portion of

her diagnosis on page five is decided upon except that the claimant was able to make the case that

she's having a number of stressors in her life primarily revolving around her physical limitations and

pain. . .  I think it's very heavily weighted on the side of chronic pain influencing everything."  R.

904-05.  Dr. Kronberger, in reviewing the opinion of Plaintiff's counselor, Reverend Deitch,

disagreed that she was markedly limited: "[T]he restrictions of activities of daily living would not be

– for instance, from looking the last one completed [on April 8, 2008].  It says that the restrictions of

activities of daily living are extreme.  I don't think it's supported by the data, and the matter is marked

for difficulties with social functioning.  And we've already addressed the deficiencies of concentration

are not imminent or if they are, they would be moderate or mild."  R. 907.  However, Dr. Kronberger

had to qualify his opinion regarding Plaintiff's episodes of decompensation: "There have [been] no

instances of decompensation lasting two weeks, but of course, *it's very worrisome if, if – based on*

*the information that I got today, that she had an overdose of medication, intentional overdose of*

*medications*."  R. 907 (emphasis added).  The ALJ made no comment whatsoever about Dr.

Kronberger's qualification in his response, or this hole in the record, but moves on to ask questions

in order to fill in the mental abilities/impairments form with Dr. Kronberger's opinion.  R. 907-08. A few minutes later in the hearing, when the ALJ is completing the "Medical Source Statement of Ability To Do Work-Related Activities (Mental)" form (R. 705-07), and asks Dr. Kronberger for his opinion about "episodes of decompensation with extended duration," Dr. Kronberger opines "none" (R. 908) despite his previously-voiced misgivings about not having the records of Plaintiff's suicide attempt from February 2008.  Because the ALJ's decision concerning Plaintiff's mental limitations were based on the opinion of Dr. Kronberger, who did not have the attempted suicide records in front of him, but opined no episodes of decompensation anyway, the ALJ's decision was not based on substantial evidence.

Plaintiff also argues that the ALJ erred in relying on Dr. Kronberger's testimony regarding Plaintiff's "exaggeration" of symptoms, despite his misgivings about not having the underlying data to accurately interpret it. In the his decision, the ALJ noted and relied on Dr. Kronberger's testimony (R. 30), and noted he had testified that the validity indicators from the MMPI-2 suggested that Plaintiff answered in a "naively defensive attempt to appear extremely virtuous, moral and self controlled and that the results may reflect an exaggeration of real symptoms as a plea for special assistance" and "Dr. Kronberger opined that this reflected some degree of symptom exaggeration." R. 28-29.  The Commissioner in response argues only that it was not necessary for the ALJ to subpoena the CE (Dr. Merilson) to question the basis for the assigned GAF score, and the Commissioner fails to address Plaintiff's argument that Dr. Kronberger had misgivings in accepting the CE report's "exaggeration" opinion without the raw data that led to the opinion and the ALJ should have requested this before making a decision.

At the hearing, the ALJ asked Dr. Kronberger about the CE Report of Dr. Merilson[3] (Ex. 29F-R. 647-651), completed on September 27, 2007.  R. 901.  Dr. Kronberger testified that, according to the CE report, Plaintiff had normal scores on Wechsler's memory scale with general memory and this was at the high average range overall, with no deficits at all in memory.  R. 902.  Intelligence based on the testing was estimated to be in the high average range, so there was no cognitive impairment; even for depression there was no report of it impacting her test taking during the time of the CE.  R. 902.  Dr. Kronberger opined the fact that the testing results were so favorable raised some questions about the severity of the diagnosis on the one hand and, on the other hand, it seemed that the diagnosis was made primarily based on self reporting and influenced by the result of the Minnesota Multiphasic Personality Inventory-2 ("MMPI-2").  R. 903.  Dr. Kronberger explained why he could not interpret the raw data himself:

> The only difficulty with that is that the psychologist did not include the actual P scores that are the statistical measures, so we don't know if any of the validity controls are higher than 65. . . [T]his is a converted data, . . . the converted scores with raw data transmitted into actual statistical terms that we can use.  And that really tells a story.  So . . . it's possible that it's just moderately elevated, and that the MMPI is still valid.  But there is one concern or one threat to the validity in that seven out of nine scales were elevated.  In order to obtain seven out of nine scales elevated and suggest that some other scales that are irrelevant to the issue of chronic pain are not, not related such as either paranoia or schizophrenia or mania would be similarly elevated.  So there is a concern about that. . . And . . . if that still needs to be clarified then I recommend –

R. 903-04.  The transcript shows the ALJ interrupted Dr. Kronberger to confirm there was not any evidence of paranoia, mania, etc.  R. 904.  Dr. Kronberger responded:

> That's correct. So that the diagnosis is a little bit in doubt, because at least at that point there were no episodes of suicide [inaudible] that was specifically addressed in many of the prior mental status exams and visits with doctors.  So I'm not sure how the recurrent severe portion of her diagnosis on page five is decided upon except that the

---

[3]The CE report was also signed by Dr. Merilson's Psychology Associate, Maria Coiro, Ph.D., and Dr. Kronberger described Dr. Coiro as the author (R. 901) in answering the question, although Dr. Merilson appears to be the more senior psychologist who co-authored the report.

claimant was able to make the case that she's having a number of stressors in her life primarily revolving around her physical limitations and pain.

R. 90-05.  Dr. Kronberger testified:

> [T]hat's a concern that I had in trying to extrapolate from that . . . It could be that she had an elevated lie scale. . .[I]t shouldn't have driven up all the other scales. . . . It would largely reduce the other scales. . . [The] situation was seven out of ten clinical scales were, were in the pathological range, which is not consistent with overall presentation. . . . [The] psychologist that says that the scores appear to be reflective of exaggeration of real and lack of severe symptoms as a plea for special assistance.

R. 911-12. Dr. Kronberger's testimony indicates that he was concerned about the validity of Dr. Merilson's MMPI-2 psychological testing, her opinion that Plaintiff was "exaggerating" symptoms, and the impact on the validity scales.  Because the ALJ relied on Dr. Kronberger's opinion, despite these misgivings, in determining Plaintiff's mental limitations and in part in assessing her credibility regarding her symptoms, the ALJ's decision was not based on substantial evidence.[4]

## B.  Hypothetical to the VE

Plaintiff argues that the hypothetical question the ALJ posed to the VE did not comprehensively describe Plaintiff's limitations as supported by the record because he failed to incorporate all of her impairments.  The Court also notes that although Dr. Kronberger testified that Plaintiff would have moderate limitations in concentration (R. 909), and the ALJ found as part of the RFC that she has moderate limitations in concentration[5] (R. 21, 23), yet the ALJ did not include this limitation in the hypothetical to the VE.

Case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant.  *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999); *Pendley v. Heckler*, 767 F.2d 1561

---

[4]To the extent Plaintiff contends she did not receive a fair hearing because this particular ALJ was biased against her in some fashion, the issue is mooted by the ALJ's retirement which ensures the matter will be referred to a different ALJ on remand.

[5]The ALJ found Plaintiff had moderate limitations in concentration but was "able to function satisfactorily."  R. 21.

(11th Cir. 1985).  Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence.  *Pendley*, 767 F.2d  at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

The Eleventh Circuit in *Richter v. Commissioner of Social Security*, 379 Fed. Appx. 959, 2010 WL 2017650 (11th Cir. May 21, 2010)[6], held that the ALJ must accurately account for a claimant's deficiencies in concentration, persistence, and pace in the hypothetical to the VE.  In this case, the ALJ did not ask the VE a hypothetical that contained a limitation on concentration, although Plaintiff's representative did.  R. 943.  The VE testified that the dispatcher position, one of the positions listed in response to the ALJ's hypothetical, requires "extreme concentration" and focus. R. 943.  On remand, the ALJ will include in the hypothetical to the VE all limitations, including (if any) those in concentration, persistence, and pace if include as part of the RFC.

## IV.   CONCLUSION

For the reasons set forth above, the administrative decision is not consistent with the requirements of law and is not supported by substantial evidence.  Accordingly, the decision is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), for additional proceedings not inconsistent with this opinion.  The Clerk of the Court is directed to enter judgment and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on September , 2011.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

---

[6]Unpublished opinions of the Eleventh Circuit constitute persuasive and not binding authority.  *See* 11th Cir. R. 36-2 and I.O.P. 6.

Copies furnished to:

Counsel of Record